OSCN Found Document:Question Submitted by: Lyle R. Kelsey, Executive Director, Oklahoma Board of Medical Licensure & Supervision

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 Question Submitted by: Lyle R. Kelsey, Executive Director, Oklahoma Board of Medical Licensure & Supervision
2024 OK AG 3
Decided: 02/22/2024
Oklahoma Attorney General Opinions

Cite as: 2024 OK AG 3, __ __

 
¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Does Oklahoma law, specifically title 63, section 2-312(E) (Supp.2022) and title 59, section 519.6(E) (2021), authorize physician assistants to prescribe and administer Schedule II controlled dangerous substances under the direction of a delegating physician at off-site locations?
I.
SUMMARY
¶1 No. Both the plain and unambiguous language of Oklahoma law, as well as the application of long-standing rules of statutory interpretation, confirm that physician assistants' prescriptive authority over Schedule II substances is limited to on-site administration.[1] Specifically, this conclusion is derived from the Uniform Controlled Dangerous Substances Act ("UCDSA"), title 63, sections 2-309A--2-315, and the Physician Assistant Act ("PAA"), title 59, sections 519.1--524.
¶2 The relevant provision of the UCDSA, title 63, section 2-312(E), confirms that physician assistants prescribing controlled substances must otherwise comply with the PAA, specifically section 519.6 of title 59. That section grants physician assistants a general authority to "prescribe drugs, including controlled medications in Schedules II through V[,]" but expressly qualifies in the next subsection that "[a] physician assistant may write an order for a Schedule II drug for immediate or ongoing administration on site." 63 O.S.Supp.2022, 519.6(E)(1--2). This plain language can only be read one way: to limit physician assistant prescriptive authority over Schedule II drugs to on-site administration only. Thus, Oklahoma law does not allow physician assistants to prescribe or administer Schedule II drugs at off-site locations. Any other interpretation would create an absurdity that renders the limiting language meaningless.
II.
BACKGROUND
A. Oklahoma law governing prescriptive authority of physician assistants
¶3 In 1993, the PAA was signed into law after receiving overwhelming support from the Legislature. See OKLA. STATE LEG., Bill information for S.B. 334.[2] The PAA established a regulatory and licensing system covering physician assistants, authorizing them to provide health care services in certain circumstances under the supervision and direction of physicians. See S.B. 334, 44th Leg., 1993 Reg. Sess., 1993 Okla. Sess. Laws ch. 289. The PAA further authorized physician assistants to transmit prescriptions and orders for prescriptions, but not to dispense them. See id. § 6(D) (codified at 59 O.S.Supp.1993, § 519.6(D)).
¶4 Five years later, in 1998, the Oklahoma Legislature expanded a physician assistant's prescriptive authority through enrolled S.B. 1069, 46th Leg., 1998 2d Reg. Sess., 1998 Okla. Sess. Laws ch. 128 ("1998 Bill"). This 1998 Bill amended the PAA to allow physician assistants to "prescribe" prescriptions and orders rather than transmit them. Id. § 4 (amending 59 O.S.Supp.1993, § 519.6(D)). Importantly, the 1998 Bill also granted physician assistants the authority to "prescribe drugs, including controlled medications in Schedules III through V pursuant to" the UCDSA. Consistent with the same, the 1998 Bill amended the UCDSA to expressly allow a licensed physician assistant to "prescribe and administer Schedule III, IV and V controlled dangerous substances" "pursuant to subsection D of Section 519.6 of Title 59" under certain conditions and under the direction of a supervising physician. Id. § 6(C--D) (amending 63 O.S.Supp.1997, § 2-312(E)). Through the omission of any reference to Schedule II, the statutory language made clear physician assistants had no authority to prescribe Schedule II controlled substances in 1998. See 2000 OK AG 34¶ 8 ("No authority exists which gives physician assistants authority to prescribe, order, dispense or administer Schedule II controlled dangerous substances in a hospital setting.").
¶5 That changed in 2001, when S.B. 32, 48th Leg., 2001 Reg. Sess., 2001 Okla. Sess. Laws ch. 385 ("2001 Bill") was signed into law. The 2001 Bill amended the relevant provision of the PAA to include prescriptive authority for Schedule II controlled substances. Specifically, the 2001 Bill divided the relevant subsection of title 59, section 519.6 (Supp.1998) into two parts: retaining the original prescriptive authority in subsection 1 (while expanding that authority to Schedule II controlled substances), and adding subsection 2, which placed heightened restrictions on prescriptive authority for Schedule II drugs. See id. § 3(D). The only subsequent amendments to the relevant provisions of the PAA and UCDSA between 2001 and the present were the result of a re-numbering in title 59, section 519.6, which moved subsection D to subsection E.[3]
¶6 Thus, by 2001, the PAA and UCDSA established the prescriptive authority of physician assistants over controlled substances that continues to this day under title 63, section 2-312(E) (Supp.2022) and title 59. section 519.6(E) (2021). Your request is decided by interpreting these two statutory provisions.
B. Relevant statutory text
¶7 The UCDSA, title 63, sections 2-309A--2-315, grants a general authority to physician assistants to prescribe and administer Schedule II--V controlled substances under the direction of a supervising physician when (a) the physician assistant is authorized to prescribe under the PAA and (b) has otherwise complied with registration requirements. In full, section 2-312(E) states:
A physician assistant who is recognized to prescribe by the State Board of Medical Licensure and Supervision under the medical direction of a supervising physician, pursuant to Section 519.6 of Title 59 of the Oklahoma Statutes, and who has complied with the registration requirements of the Uniform Controlled Dangerous Substances Act, in good faith and in the course of professional practice only, may prescribe and administer Schedule II through V controlled dangerous substances.
63 O.S.Supp.2022 § 2-312(E).
¶8 The PAA, title 59, sections 519.1--524, contains a similar general grant of prescriptive authority to physician assistants for Schedule II--V controlled substances. Subsection 1 of section E, which provides that general grant of authority, states in relevant part:
The physician assistant may prescribe drugs, including controlled medications in Schedules II through V pursuant to Section 2-312 of Title 63 of the Oklahoma Statutes, and medical supplies and services as delegated by the delegating physician and as approved by the State Board of Medical Licensure and Supervision after consultation with the State Board of Pharmacy on the Physician Assistant Drug Formulary.
59 O.S.2021, § 519.6(E)(1). Subsection 2 of section E addresses the more specific prescriptive authority of physician assistants over Schedule II controlled substances, stating in relevant part:
A physician assistant may write an order for a Schedule II drug for immediate or ongoing administration on site. Prescriptions and orders for Schedule II drugs written by a physician assistant must be included on a written protocol determined by the delegating physician and approved by the medical staff committee of the facility or by direct verbal order of the delegating physician. 
Id. § 519.6(E)(2).
III.
DISCUSSION
¶9 To interpret the two statutory provisions governing physician assistants' prescriptive authority over Schedule II controlled substances, we begin with the text. When the text of a statute is plain and unambiguous, courts will "give effect to the legislative intent and purpose as expressed by the statutory language." Am. Airlines, Inc. v. State ex rel. Okla. Tax Comm'n, 2014 OK 95, ¶ 33, 341 P.3d 56, 64. Put differently, when statutory language is clear, "the courts may not search for its meaning beyond the statute itself, but will give it the meaning intended by the Legislature." Armstrong v. Sewer Improvement Dist. No. 1, 1948 OK 198, ¶ 13, 199 P.2d 1012, 1017.
¶10 When statutory language is ambiguous, or "susceptible to more than one reasonable interpretation[,]" courts will "apply rules of statutory construction" to ascertain legislative intent. Am. Airlines, Inc., 2014 OK 95, ¶ 33, 341 P.3d at 64. One of those well-established rules requires an ambiguous statute "to be given a reasonable construction, one that will avoid absurd consequences if this can be done without violating legislative intent." Id. Another requires legislative intent "be ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each." Id., 341 P.3d at 64--65. Similarly, "a statute should be given a construction which renders every word and sentence operative rather than one that renders some words or sentences idle and nugatory." Case v. Pinnick, 1939 OK 467, ¶ 6, 97 P.2d 58, 60. Finally, the "general words in a statute are limited by subsequent more specific terms." City of Okla. City v. Int'l Ass'n of Fire Fighters, Local 157, 2011 OK 29, ¶ 17, 254 P.3d 678, 683.
¶11 Here, the relevant statutory provisions governing physician assistant prescriptive authority over Schedule II drugs are clear and unambiguous. Even if ambiguity exists, however, only one reasonable interpretation is supported by the text and well-established rules of statutory interpretation.
A. The UCDSA requires compliance with the PAA, specifically title 59, section 519.6 (2021).
¶12 The plain language of the UCDSA, at title 63, section 2-312, can only be read one way: to require physician assistants prescribing controlled substances to comply with the separate requirements set out in the PAA, at title 59, section 519.6. Section 2-312(E) of the UCDSA limits prescriptive authority to a physician assistant who is "recognized to prescribe by the State Board of Medical Licensure and Supervision under the medical direction of a supervising physician, pursuant to Section 519.6 of Title 59 of the Oklahoma Statutes," among other things. Id. (emphasis added.) Thus, a clear condition of prescriptive authority is the physician assistant's compliance with title 59, section 519.6.[4]
¶13 Even if the language of section 2-312(E) was susceptible to more than one interpretation, only one interpretation here is reasonable: that the UCDSA requires physician assistants prescribing scheduled substances to otherwise comply with the relevant requirements of the PAA found in title 59, section 519.6. By referencing title 59, section 519.6, the UCDSA adopts that statute "and makes it wholly or partially applicable to the subject of the reference statute." CompSource Mut. Ins. Co. v. State ex rel. Okla. Tax Comm'n, 2018 OK 54, ¶ 20, 435 P.3d 90, 98--99. Moreover, because both the UCDSA and the PAA govern the same subject--a physician assistant's prescriptive authority over controlled substances--they "must be construed as a harmonious whole." Taylor v. State Farm Fire & Cas. Co., 1999 OK 44, ¶ 19, 981 P.2d 1253, 1261. After all, "[a]ll legislative enactments in pari materia are to be interpreted together as forming a single body of law that will fit into a coherent symmetry of legislation." Id.
¶14 Moreover, the legislative history behind section 2-312(E) confirms the intent to harmonize the requirements of the UCDSA with the requirements of the PAA in section 519.6.
[5] As an example, the 2020 re-organization of section 519.6 that moved the relevant text of subsection D to subsection E rendered the UCDSA's prior reference to subsection D of section 519.6 obsolete. See supra note 2. Thus, the Legislature had to update this reference to cure an ambiguity over whether physician assistants prescribing controlled substances under the UCDSA were still subject to the relevant portion of the PAA. Without updating this reference, the plain language of the UCDSA would not have required physician assistants to comply with the relevant portion of the PAA, which only reinforces the conclusion that the intent of the 2022 amendment was to bring the requirements of UCDSA into harmony with the PAA--not to create a set of conflicting requirements between the two. It is unremarkable, to say the least, that the Legislature opted to leave a broad statutory reference rather than change "D" to "E." The decision was no doubt aimed to reduce the number of amendments required to keep the UCDSA and PAA in harmony on an ongoing basis.
¶15 In conclusion, both the plain and unambiguous text of section 2-312(E), as well as rules of statutory interpretation, confirm that physician assistants prescribing controlled substances pursuant to the UCDSA must otherwise comply with the PAA, specifically title 59, section 519.6.
B. The PAA restricts physician assistant prescriptive authority over Schedule II drugs to on-site administration only.
¶16 The plain language of the PAA, at title 59, section 519.6, can only be read one way: to restrict physician assistants' prescriptive authority over Schedule II controlled substances to on-site administration. The text of section 519.6(E)(2) is clear and unambiguous when it comes to prescriptive authority over Schedule II drugs. It states, among other requirements, that "[a] physician assistant may write an order for a Schedule II drug for immediate or ongoing administration on site." 59 O.S.2021, § 519.6(E)(2) (emphasis added). Thus, if a physician assistant wishes to write an order for a Schedule II drug, that order must be for immediate or ongoing administration on site.
¶17 The use and placement of the word "may" in the sentence structure denotes the discretion of the physician assistant to prescribe Schedule II drugs, not discretion to disregard the subsequent limitation "for immediate or ongoing administration on site." Id. Put differently, the word "may" merely conveys that a physician assistant may but need not prescribe Schedule II drugs pursuant to this statutory authority. A contrary reading, one that interprets "may" as rendering the subsequent limitations to the Schedule II prescriptive authority optional, would create an absurdity that renders the entire sentence superfluous. If the Legislature intended physician assistant prescriptive authority over Schedule II drugs to extend to both on-site and off-site administration, it could have so said. But "[w]e may not add words that are not there" and we "will not presume the legislature has done a vain and useless act." Frank Bartel Transp., Inc. v. State ex rel. Murray State Coll., 2023 OK 121, ¶ 5, 540 P.3d 480, 483; State ex rel. Thompson v. Ekberg, 1980 OK 91, ¶ 7, 613 P.2d 466, 467; see also Patterson v. Beall, 2000 OK 92, ¶ 24, 19 P.3d 839, 845 (explaining that "the mention of one thing in a statute impliedly excludes another thing").
¶18 The words and phrases used in subsection 2 of title 59, section 519.6(E) are unambiguous and susceptible to only one reasonable interpretation. For example, the plain meaning of the phrase "Schedule II drug" encompasses any and every Schedule II drug, including those encompassed by the first subsection. The fact that the first subsection grants physician assistants general authority to "prescribe drugs, including controlled medications in Schedules II through V" does not alter this plain language. Nor does it create ambiguity or conflict. The broad grant of prescriptive authority over Schedule II--V drugs (in subsection 1) does not inherently conflict with the more specific limitation of Schedule II drug prescriptive authority (in subsection 2). See McIntosh v. Watkins, 2019 OK 6, ¶ 4, 441 P.3d 1094, 1096 ("The legislative intent will be ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each."). More importantly, even if conflict could be imagined, it must be resolved to give effect to the more specific terms of subsection 2. See Ekberg, 1980 OK 91, ¶ 7, 613 P.2d at 467 ("[A]s a rule, general words in a statute are limited by subsequent more specific terms."). As the Oklahoma Supreme Court has made clear: "[w]here a matter is addressed by two statutes--one specific and the other general--the specific statute, which clearly includes the matter in controversy and prescribes a different rule, governs over the general statute." State ex rel. Trimble v. City of Moore, 1991 OK 97, ¶ 30, 818 P.2d 889, 899. Any contrary interpretation would render the express limitations found in subsection 2 meaningless and fail to give harmonious effect to the entirety of section 519.6(E).[6]
¶19 Similarly, the term "order" used in subsection 2 is synonymous and interchangeable with the term "prescription," which is defined in the UCDSA and the Oklahoma Pharmacy Act as an "order" for a drug or controlled dangerous substance. 63 O.S.Supp.2023, § 2-309(D)(1); 59 O.S.Supp.2022, § 353.1(41); see also MERRIAM-WEBSTER'S MED. DESK DICTIONARY 667 (Revised ed. 2005) (defining "prescription" as "a written direction for the preparation, compounding, and administration of a medicine"); id. at 580 (defining "order" as "to give a prescription for: PRESCRIBE"). A prior Attorney General Opinion took up a remarkably similar issue in 2001, albeit in the context of veterinary prescription drugs. See 2001 OK AG 21¶¶ 12--19. As that opinion explained:
These statutory definitions [in the Pharmacy Act] indicate the terms "drug order" and "prescription" are virtually interchangeable. A prescription is an order for dangerous drugs and an order for dangerous drugs is a prescription. Most simply put, both a 'drug order' and a 'prescription' are instructions to a person authorized to dispense a dangerous drug. 
Id. ¶ 14 (emphasis omitted). Thus, to "write an order" is to write a prescription, which matches the very definition of the verb prescribe: "to write or give medical prescriptions." MERRIAM-WEBSTER'S MED. DESK DICTIONARY 666--67 (Revised ed. 2005). Accordingly, the plain meaning supports the conclusion that the Legislature did not intend the phrase "write an order" used in subsection 2 to convey a different or more limited prescriptive authority than the phrase "prescribe" used in subsection 1.
¶20 The history of amendments to section 519.6 confirms the Legislature's intent to place heightened restrictions on a physician assistant's authority to prescribe Schedule II controlled substances. When physician assistants were first granted general prescriptive authority over controlled substances in 1998, that authority did not include Schedule II drugs. See S.B. 1069, 46th Leg., 1998 2d Reg. Sess., 1998 Okla. Sess. Laws ch. 128 §§ 4, 6. Likewise, when the Legislature added that authority in 2001, and expanded what is now subsection 1 to include Schedule II, it simultaneously added the specific requirements now found in subsection 2. See S.B. 32, 48th Leg., 2001 Reg. Sess., 2001 Okla. Sess. Laws ch. 385 § 3(D). Thus, it is evident that the new prescriptive authority over Schedule II drugs was subject to the restrictions added in subsection 2.
¶21 The title of the 2001 Bill confirms that this is the correct construction of section 519.6. See Kratz v. Kratz, 1995 OK 63, ¶ 15, 905 P.2d 753, 756 ("The title to an Act is a valuable aid in its construction and may be considered in determining legislative intent.") Here, the title of the 2001 Bill states that the purpose of this amendment was to "specify[] when physician assistants may write orders or prescriptions for Schedule II drugs . . . ." Id. To accomplish this, the Legislature specified that which was previously otherwise absent from section 519.6: that physician assistants are expressly limited to prescribing a Schedule II drug on site. Patterson, 2000 OK 92, ¶ 24, 19 P.3d at 845.
¶22 In sum, the plain language of title 59, section 519.6(E) can only be read one way: to limit physician assistant prescriptive authority over Schedule II drugs to on-site administration only.
¶23 It is, therefore, the official Opinion of the Attorney General that:
Oklahoma law, specifically title 63, section 2-312(E) (Supp.2022) and title 59, section 519.6(E) (2021), does not allow physician assistants to prescribe and administer Schedule II controlled dangerous substances under the direction of a delegating physician at off-site locations. Physician assistants' prescriptive authority over Schedule II substances is limited to on-site administration only.
GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
AUDREY A. WEAVER
ASSISTANT SOLICITOR GENERAL
FOOTNOTES
[1] Your request did not ask the Attorney General to opine on the meaning of "off-site locations[,]" on-site locations, or "immediate or ongoing administration on site[,]" as used in title 59, section 519.6(E)(2) (2021). Thus, such questions are beyond the scope of this Opinion.
[2] Available at http://www.oklegislature.gov/BillInfo.aspx?Bill=SB334&Session=9300 (last visited Feb. 21, 2024).
[3] See S.B. 1915, 57th Leg., 2020 2d Reg. Sess., 2020 Okla. Sess. Laws ch.154 § 2. Consistent with this 2020 amendment to the PAA, the complementary provision of the UCDSA was amended in 2022 to strike the reference to "subsection D" previously appearing in title 63, section 2-312(E) (2001). See S.B. 1322, 58th Leg., 2022 2d Reg. Sess., 2022 Okla. Sess. Laws ch. 184 § 2.
[4] The general reference to "Section 519.6 of Title 59" here makes clear that compliance with the entirety of that statute is required. The fact that the prior, superseded version of this statute included a specific subsection reference does not alter this plain language.
[5] It is, of course, "proper to consider the history and consistent purpose of the legislation on the subject and to discover the policy of the Legislature as disclosed by the course of the legislation." McNeill v. City of Tulsa, 1998 OK 2, ¶ 9, 953 P.2d 329, 332.
[6] The legislative decision to subdivide section 519.6(E) into two parts does not undermine this conclusion. No statutory canon of construction places the organizational form above the statutory language. Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 227 (1957) ("The change of arrangement, which placed portions of what was originally a single section in two separated sections cannot be regarded as altering the scope and purpose of the enactment."). Thus, we will not ignore well-established rules of statutory construction in favor of an unreasonable assumption that the division of the two parts demands separate and equal treatment.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions

 
Cite
Name
Level

 
2001 OK AG 21, 
Question Submitted by: Cathy Kirkpatrick, Executive Director, Board of Veterinary Medical Examiners
Cited

 
2000 OK AG 34, 
Question Submitted by: Lyle Kelsey, Executive Director, Board of Medical Licensure and Supervision
Cited

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1939 OK 467, 97 P.2d 58, 186 Okla. 217, 
CASE v. PINNICK
Discussed

 
1991 OK 97, 818 P.2d 889, 62 OBJ 2887, 
State ex rel. Trimble v. City of Moore
Discussed

 
1948 OK 198, 199 P.2d 1012, 201 Okla. 531, 
ARMSTRONG v. SEWER IMPROVEMENT DIST. NO. 1
Discussed

 
1995 OK 63, 905 P.2d 753, 66 OBJ 2032, 
Kratz v. Kratz
Discussed

 
2000 OK 92, 19 P.3d 839, 71 OBJ 3016, 
PATTERSON v. BEALL
Discussed at Length

 
2011 OK 29, 254 P.3d 678, 
CITY OF OKLAHOMA CITY v. INTERNATIONAL ASSOC. OF FIRE FIGHTERS, LOCAL 157
Discussed

 
2014 OK 95, 341 P.3d 56, 
AMERICAN AIRLINES, INC. v. STATE ex rel. OKLAHOMA TAX COMMISSION
Discussed at Length

 
1980 OK 91, 613 P.2d 466, 
State ex rel. Thompson v. Ekberg
Discussed at Length

 
2018 OK 54, 435 P.3d 90, 
COMPSOURCE MUTUAL INSUR. CO. v. STATE ex rel. OKLA. TAX COMM. and OKLA. ASSOC. OF ELECTRIC SELF INSURERS FUND v. STATE OF OKLA. TAX COMM.
Discussed

 
2019 OK 6, 441 P.3d 1094, 
MCINTOSH v. WATKINS
Discussed

 
2023 OK 121, 
FRANK BARTEL TRANSPORTATION v. STATE ex rel. MURRAY STATE COLLEGE
Cited

 
1998 OK 2, 953 P.2d 329, 69 OBJ 208, 
McNEILL v. CITY OF TULSA
Discussed

 
1999 OK 44, 981 P.2d 1253, 70 OBJ 1664, 
Taylor v. State Farm Fire and Casualty Co.
Discussed

Title 59. Professions and Occupations

 
Cite
Name
Level

 
59 O.S. 353.1, 
Definitions
Cited

 
59 O.S. 519.6, 
Practice Agreements - License Required
Discussed at Length

Title 63. Public Health and Safety

 
Cite
Name
Level

 
63 O.S. 2-309, 
Electronic Prescriptions - Exceptions - Practitioners Shall Register - Prescription Forms
Cited

 
63 O.S. 2-312, 
Prescription and Administration of Controlled Dangerous Substances
Discussed